IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

MARK THOMAS                                                      PLAINTIFF

v.                                        CIVIL ACTION NO. 3:21-cv-260-SA-RP

NORTH MISSISSIPPI
HEALTH SERVICES, INC.                                       DEFENDANT

ORDER AND MEMORANDUM OPINION

On December 28, 2021, Mark Thomas initiated this civil action by filing his Complaint [1] against North Mississippi Health Services, Inc. ("NMHS") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. Thomas and NMHS have each filed Motions for Summary Judgment [18], [24]. Having reviewed the parties' filings, as well as the applicable authorities, the Court is prepared to rule.

*Relevant Factual and Procedural Background*

The facts of this case are straightforward and undisputed. Thomas's wife, Becky Thomas, died on September 4, 2020. Becky Thomas previously worked at NMHS and was vested in a retirement plan ("the Plan") administered by NMHS, though she died prior to drawing from the Plan. Upon his wife's death, Thomas applied to receive benefits under the Plan. NMHS determined that Thomas was eligible for benefits in the form of an annuity—not a lump sum payment. Thomas internally appealed the decision, asserting that the plain language of the Plan entitled him to elect distributions as a lump sum payment.[1] Ultimately, the Appeals Committee reached the same

---

[1] Thomas's Motion [25] references his wife's receipt of a letter from NMHS dated May 13, 2016, informing her of a "voluntary, limited-time opportunity" to receive her full Plan benefit in a lump sum payment. [25] at p. 1. NMHS contends that this was an offer for Participants to withdraw their benefit during a specific window of time. Further, while Thomas references this letter, he does not rely on it to assert that the Plan language entitles him to elect a lump sum benefit. Therefore, the Court sees no need to address it further.

conclusion that Thomas was not entitled to a lump sum payment. Thomas thereafter filed suit in this Court.

The parties do not dispute these facts, nor do they dispute that Thomas is entitled to benefits under the Plan. The parties' disagreement is limited to whether the Plan's language entitles Thomas to receive the distribution in a lump sum. Thomas alternatively argues that he is at least entitled to the have his entire interest distributed within the next five years. Both parties move for summary judgment in their favor.

*Summary Judgment Standard*

"Standard summary judgment rules control in ERISA cases." *Ramirez v. United Omaha Life Ins. Co.*, 872 F.3d 721, 725 (5th Cir. 2017) (citing *Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 651 (5th Cir. 2009)). Summary judgment is appropriate where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a).

*Analysis and Discussion*

The parties do not dispute that the Plan grants NMHS discretion to interpret its terms. *See* [17], Ex. 1 at p. 22. "When [] the ERISA plan grants the administrator the discretion to interpret the meaning of the plan, th[e] court will reverse an administrator's decision only for an abuse of discretion." *Porter v. Lowe's Co., Inc.'s Business Travel Acc. Ins. Plan*, 731 F.3d 360, 363 (5th Cir. 2013) (citing *Crowell v. Shell Oil Co.*, 541 F.3d 295, 312 (5th Cir. 2008)). "When applying the abuse of discretion standard, the Court should analyze 'whether the plan administrator acted arbitrarily or capriciously.'" *Crump v. Aetna*, 2020 WL 6265072, at *6 (N.D. Miss. Oct. 23, 2020) (citing *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1014 (5th Cir. 1992)). The Court's "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness—

2

even if on the low end." *Corry v. Liberty Life Assur. Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007) (quotation omitted).

"Applying an abuse of discretion review of an administrator's interpretation of the plan consists of a two-step process: first inquiring whether the plan administrator's decision was 'legally correct,' and, if it is not, secondly inquiring whether the administrator abused his discretion." *Porter*, 731 F.3d at 364 (quoting *Crowell*, 541 F.3d at 312). There are several factors the Court considers in deciding whether an administrator's interpretation of a plan was legally correct: "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." *Langley v. Howard Hughes Mgmt. Co., L.L.C., Separation Benefits Plan*, 694 F. App'x 227, 231-32 (5th Cir. 2017) (quoting *Gosselink v. AT&T, Inc.*, 272 F.3d 722, 726-27 (5th Cir. 2001)). "If the administrator's interpretation of the plan is legally correct, the inquiry ends because no abuse of discretion could have occurred." *Id.* at 232 (citing *Gosselink*, 272 F.3d at 726).

Turning to the first factor, the Court concludes that it is neutral because neither party points to evidence that similar claims were treated differently. *See Baker v. Aetna Life Ins. Co.*, 260 F. Supp. 3d 694, 702 (N.D. Tex. May 9, 2017) (citing *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 608 (5th Cir. 1998)) (finding uniform construction factor neutral where court could not determine that similar claims were treated differently).

The Court therefore turns to the second factor—whether the administrator's interpretation is consistent with a fair reading of the plan. This is the most important factor in the analysis. *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 260 (5th Cir. 2009) (citing *Crowell*, 541 F.3d at 313). "Under any ERISA plan, the eligibility for benefits 'is governed in the first instance

3

by the plain meaning of the plan language.'" *Id*. (quoting *Crowell*, 541 F.3d at 314). "ERISA plans are interpreted in their 'ordinary and popular sense as would a person of average intelligence and experience.'" *Id*. (quoting *Crowell*, 541 F.3d at 314). "[P]lan provisions must be interpreted as they are likely to be understood by the average plan participant, consistent with the statutory language." *Id*. (citing *Crowell*, 541 F.3d at 314) (internal quotations omitted).

At the center of this dispute are two provisions that appear to be applicable when a Participant dies prior to receiving retirement benefits. NMHS contends that Section 8.01 applies, which reads in pertinent part:

> All distributions are subject to the provisions of Section 8. Benefits payable to a Participant who retires or terminates Service shall be paid in the form of a Qualified Joint and Survivor Annuity unless the Participant elects at any time during the applicable election period described in Section 8.02 and in accordance with the consent requirements of Section 8.03 to waive the Qualified Joint and Survivor Annuity form of benefit and elects another form of benefit pursuant to the provisions of this Section 8. *Benefits payable on account of the death of the Participant prior to the Participant's Annuity Starting Date shall be paid pursuant to the provisions of Section 7.05.*

[17], Ex. 1 at p. 32-33 (emphasis added).

Section 7.05 in turn reads, in pertinent part:

> In the event a married Participant who has a nonforfeitable right to any portion of his or her Accrued Benefit dies prior to his or her Annuity Starting Date, the Participant's Eligible Spouse shall be provided a Qualified Preretirement Survivor Annuity. [. . .]
>
> . . .
>
> Notwithstanding the foregoing, in the event the Present Value of the Qualified Preretirement Survivor Annuity does not exceed $5,000 on the date of the Participant's death, the provisions of this Section 7.05 shall not apply and benefits shall be distributed to the Participant's Eligible Spouse or the Participant's Beneficiary, as applicable, in a lump sum as soon as practicable after the Participant's death, or as soon as practicable following July 31, 2016

4

> with respect to a Participant whose death occurred prior to August 1, 2016. However, no distributions may be made under the preceding sentence after the Annuity Starting Date unless the Eligible Spouse, if applicable, consents to such distribution.

*Id.* at p. 27-28.[2]

Thomas contends that Section 8.15, titled "Participant's Death Before Annuity Distributions Begin," applies. *Id.* at p. 42. Section 8.15 reads, in pertinent part, as follows:

> If a Participant dies before the date distributions begin, distribution of the Participant's entire interest will be completed by December 31 of the calendar year containing the fifth anniversary of the Participant's death (the "five year rule"). However, if any portion of the Participant's interest is payable to the Participant's Designated Beneficiary, the Participant or Designated Beneficiary may elect to have such interest paid (beginning within one year of the Participant's death) over the life of the Designated Beneficiary or over a period certain not exceeding:
>
> (a) the life expectancy of the Designated Beneficiary determined using the Designated Beneficiary's age as of the Designated Beneficiary's birthday in the calendar year immediately following the calendar year of the Participant's death; or
>
> (b) the life expectancy of the Designated Beneficiary determined using the Designated Beneficiary's age as of the Designated Beneficiary's birthday in the calendar year that contains the Annuity Starting Date, if the Annuity Starting Date is before the first distribution calendar year.
>
> If the Participant's surviving spouse is the Participant's sole Designated Beneficiary, and the surviving spouse dies before distributions to the surviving spouse begin, this Section will apply as if the surviving spouse were the Participant, except that the time by which distributions must begin will be determined without regard to Section 8.10(a).

*Id.* at p. 42.

---

[2] The Court notes that, according to the 2016 letter regarding the limited-time opportunity to receive a lump sum payment, the value of Becky Thomas's vested interest exceeded $5,000. *See* [17], Ex. 2 at p. 2.

When Thomas applied for benefits and sought a lump sum payment, NMHS determined that Section 8.01 governs—which states that benefits are payable under Section 7.05 when a Participant dies before her Annuity Starting Date—because Becky Thomas died prior to her Annuity Starting Date. *See* [17], Ex. 3 (email with initial benefits determination); *see also* [17], Ex. 5 (NMHS response to internal appeal). Under this interpretation, Thomas is entitled to a Qualified Preretirement Survivor Annuity ("QPSA") with no right to elect a lump sum payment. Thomas responds that Sections 8.01 and 7.05 cannot apply because Becky Thomas never selected an Annuity Starting Date. Thus, Thomas contends that Section 8.15 applies because it does not reference an Annuity Starting Date. The Court will address Thomas's argument first.

The Plan defines an "Annuity Starting Date" as "the first day of the first period for which an amount is payable as an annuity or, in the case of a benefit not payable in the form of an annuity, the first day on which all events have occurred which entitle the Participant to such a benefit." [17], Ex. 1 at p. 8. Under Thomas's interpretation, an Annuity Starting Date would only exist if the Participant selected one. Therefore, according to Thomas, no provision that mentions an Annuity Starting Date (i.e., Sections 8.01 and 7.05) can apply because Becky Thomas had not selected one. Complicating the issue is NMHS's apparent concession that Becky Thomas did not have an Annuity Starting Date. *See* [17], Ex. 5 at p. 2. However, under NMHS's interpretation, Becky had no Annuity Starting Date because that is "the date on which his or her annuity starts," and she died prior to receiving any benefits. *Id*. Thus, according to NMHS, Sections 8.01 and 7.05 still apply because she died before her annuity benefits began.

The Court agrees with NMHS's reading of the plan. As an initial observation, Thomas submits that he should be allowed to elect a pay out under the five-year rule in Section 8.15 because it makes no reference to an Annuity Starting Date. *See* [29] at p. 3. Notably, the other pay out

6

option under Section 8.15 is the life expectancy rule, which includes a start date that can be calculated with reference to the Annuity Starting Date. *See* [17], Ex. 1 at p. 42 (Section 8.15(b)). This cuts against Thomas's argument that Section 8.15 specifically applies in instances where an Annuity Starting Date does not exist for lack of selection. Further, the Plan defines an Annuity Starting Date as the first day on which an amount is payable, without reference to whether the Participant has elected to begin payments.

More broadly, the Court finds that NMHS's conclusion that Thomas is entitled to a QPSA under Sections 8.01 and 7.05 is a fair reading of the plan. Under Section 8.01, "Benefits payable to a Participant who retires or terminates Service *shall* be paid in the form of a Qualified Joint and Survivor Annuity," unless the Participant follows the Plan's procedures to waive the annuity. [17], Ex. 1 at p. 32-33 (emphasis added). Importantly, Section 8.01's language is mandatory—benefits *shall* be in the form a Qualified Joint and Survivor Annuity ("QJSA"). It is therefore logical that Section 8.01 goes on to provide that where a Participant dies prior to her Annuity Start Date, benefits *shall* be payable to the Participant's spouse in the form a QPSA—a similar annuity— under Section 7.05. *See id*. at p. 27 ("In the event a married Participant . . . dies prior to his or her Annuity Starting Date, the Participant's Eligible Spouse shall be provided a Qualified Preretirement Survivor Annuity."). In other words, the plain language of the Plan mandates benefits in the form of a QJSA. If the Participant dies prior to the Annuity Starting Date, the Plan mandates that the Eligible Spouse be paid a QPSA.

And importantly, "plan provisions must be interpreted as they are likely to be understood by the average plan participant, *consistent with the statutory language*." *Stone*, 570 F.3d at 260 (emphasis added). ERISA, as amended by the Retirement Equity Act of 1984, also provides that where a vested participant dies prior to her annuity starting date, leaving behind an eligible

surviving spouse, "a qualified preretirement survivor annuity shall be provided to the surviving spouse." 29 U.S.C. § 1055(a)(2). Therefore, the statutory language also supports NMHS's finding that Thomas is entitled to a QPSA.

The Court feels compelled to address an argument that Thomas raises in response to additional reasoning provided by NMHS. In response to Thomas's internal appeal, NMHS stated the following:

> The appeal alleges that Section 8.15 controls the distribution of benefits. The Plan Administrator interpreted Section 8.15 to set forth rules related to the timing of benefit payments when a lump sum is properly available and elected rather than creating a right to a form of benefit separate from those described in Section 8.05, and the [Appeals] Committee affirms that reading.
>
> . . .
>
> Even if Section 7.05 did not apply to the benefit, Section 8.05 sets forth the exclusive forms of benefit. Lump sum is a listed form; however, it is not available if the amount of the lump sum exceeds $5,000. When read together, Section 8.05 and Section 8.15 provide that a lump sum benefit, if available, must be paid within five years, not that a lump sum benefit is available under any circumstances. If Section 8.05 had not provided for a lump sum, the language of Section 8.15 would not have contained the "five (5) year rule." Those sections are meant to work in conjunction with each other. The language of Section 8.15 and the sections around it track the statutory distribution requirements of Section 401(a)(9). They do not provide additional discretionary benefits under the Plan. Reading 8.05 and 8.15 together provides the only reasonable interpretation of the provisions, which is how the Plan Administrator interpreted the Plan.

[17], Ex. 5 at p. 1-2.

The Court appreciates how NMHS may have reached the conclusion that Section 8.15 applies only where a lump sum payment is due. Section 8.15 states that "[i]f a Participant dies before the date distributions begin, distribution of the Participant's *entire* interest will be completed by December 31 of the calendar year containing the fifth anniversary of the Participant's

8

death (the 'five year rule')." [17], Ex. 1 at p. 42 (emphasis added). Section 8.15's use of the word "entire" could have reasonably led NMHS to find that the Section 8.15 only applies where the Plan allows the Participant to receive their entire interest, which would be where a lump sum payment is due because the benefit is under $5,000.

On the other hand, reading the Plan as a whole, the Court also appreciates part of Thomas's counterargument. Section 8.01 states that "[i]n the event the Present Value of the Qualified Joint and Survivor Annuity does not exceed $5,000 on the date of distribution of benefits, the provisions of Section 8 shall not apply and benefits shall be distributed to the Participant in a lump sum as provided in Section 7.07 and 7.13." [17], Ex. 1 at p. 33. If the provisions of Section 8 do not apply where a lump sum is due, then it is not clear to the Court that Section 8.15 applies only where a lump sum is due (as NMHS contends). However, Thomas uses this line of argument to assert that he is entitled to elect a lump sum distribution under Section 8.15. The Court disagrees with that conclusion in light of Sections 7.05, 7.13, 8.01, and 8.05(e)—all of which clearly limit lump sum distributions to benefits under $5,000. The Court only admits that NMHS's reason for rejecting the application of Section 8.15 appears to be flawed.[3]

Nevertheless, the Court maintains its position that NMHS's ultimate conclusion that Thomas is entitled to a QPSA is a fair reading of the Plan. As explained above, the Plan uses mandatory language to provide for a QPSA to the Eligible Spouse where the Participant has died prior to her Annuity Starting Date. This factor weighs in favor of finding that the administrator's interpretation of the Plan was legally correct.

---

[3] The Court finds that the Plan clearly mandates a QPSA. However, even if the Court found the Plan ambiguous due to possible applicability of Section 8.15, NMHS has the power to resolve ambiguities and would not be reversed absent abuse of discretion. *See Porter*, 731 F.3d at 365 (citing *High v. E-Sys. Inc.*, 459 F.3d 573, 579 (5th Cir. 2006)) ("[W]hen a plan administrator is given broad discretion to interpret a plan, it has the power to resolve ambiguities.").

The Court finds the third factor—any unanticipated costs resulting from different interpretations of the Plan—is neutral because neither party presented arguments on this issue. *See Seymour v. Bluecross Blueshield of South Carolina*, 205 F. Supp. 3d 827, 834 (E.D. La. Sept. 8, 2016) (citing *Shedrick v. Marriot Int'l, Inc.*, 2012 WL 601881, at *8 (E.D. La. Feb. 23, 2012)) (drawing no inferences in favor of either party where no party argued that an interpretation would result in unanticipated costs).

Having weighed the three applicable factors, the Court finds that NMHS's interpretation of the Plan was legally correct. Therefore, NMHS could not have abused its discretion. *See Stone*, 570 F.3d at 262.[4]

*Conclusion*

For the reasons set forth above, NMHS's Motion for Summary Judgment [18] is GRANTED; Thomas's Motion for Summary Judgment [24] is DENIED; Thomas's Complaint [1] is dismissed *with prejudice*. A Final Judgment consistent with the Order and Memorandum Opinion will issue this day. This CASE is CLOSED.

SO ORDERED, this the 29th day of March, 2023.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE

---

[4] The Court notes that Thomas raised an argument regarding NMHS's conflict of interest. A conflict of interest exists where an administrator both administers the plan and determines eligibility for benefits. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008). NMHS does not dispute that it has a conflict of interest. However, the Court only weighs the conflict of interest when it reaches the second step of its analysis—whether the administrator abused its discretion. *Stone*, 570 F.3d at 257 (citations omitted). Here, the Court's inquiry ended at the first step—whether the administrator's interpretation was legally correct. Moreover, Thomas presented no argument or evidence that NMHS's conflict of interest affected its benefits decision. Therefore, the Court sees no need to address it further.